UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

16251 BOSTON LLC,

    Plaintiff,

v.

BOSTON MARKET CORPORATION,

    Defendant.
_____/

## COMPLAINT

Plaintiff 16251 Boston LLC sues Defendant Boston Market Corporation for breach of contract.

### Jurisdiction and Venue

1. The Court has subject-matter jurisdiction under any of 28 U.S.C. § 1332(a)(1)–(3), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States, (2) citizens of a State and citizens of a foreign state, and (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties.

2. Under 28 U.S.C. § 1391(b)(2), venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this district and a substantial part of the property that is the subject of the action is situated in this district.

### Parties

3. At all times material to this action, 16251 Boston LLC ("Landlord") was a Florida limited liability company with its principal place of business in Aventura, Florida. Landlord comprises five members: Aldo Rainero, Alberto Stekelberg, Alberto Chucrel, Leon Halac, and Edgar

Halac. Rainero, Stekelberg, Chucrel, and Leon Halac are each citizens of the Argentine Republic. Edgar Halac is domiciled in and a citizen of the state of Florida. Thus, for purposes of diversity of citizenship, Landlord is a citizen of a foreign state (the Argentine Republic) and of the state of Florida.

4. At all times material to this action, Boston Market Corporation ("Tenant") was a Delaware corporation with its principal place of business in Golden, Colorado. Thus, under 28 U.S.C. § 1332(c)(1), Tenant is a citizen of the state of Delaware and of the state of Colorado.

**Factual Allegations**

5. Landlord owns the real property located at 16251 W. Dixie Highway, North Miami Beach, Florida 33160 (the "Premises").

6. In August 2007, the then-landlord of the Premises (the "former landlord") entered into a Land and Building Lease Agreement (the "Lease") with Tenant for Tenant to lease the Premises for use as a Boston Market restaurant for a term of twenty-one years. A copy of the Lease and all amendments to it are attached as Exhibit A.

7. In 2012, the former landlord sold the Premises and assigned all its right, title, and interest as landlord in and to the Lease to Landlord. A copy of the assignment and related documents is attached as Exhibit B.

8. Several provisions of the Lease are relevant here:

   a. Tenant was required to maintain the Premises "in good order and repair" and to "make such repairs and replacements as may be necessary." Lease § 11.1.

   b. Tenant was forbidden from rendering Landlord or the Premises liable "for any lien or right of lien for the payment of any claim for labor, material, or for any change or expense incurred to maintain, to repair, or to make Alterations to the Premises." *Id.* § 12.2.

    c. "Failure by Tenant to perform or comply with any provision of this Lease" would constitute an "Event of Default" if "the failure is not cured within thirty (30) days after written notice has been given to Tenant." *Id.* § 17.1.3.

    d. And "[t]ime is of the essence of every provision of this Lease." *Id.* § 28.11.

9. As set forth below, Tenant defaulted on both section 11.1 and section 12.2 of the Lease.

**Default of Section 11.1 of the Lease**

10. On June 1, 2022, the Fire Prevention Division of Miami-Dade County issued on Landlord a formal notice (the "Notice") stating that a "routine fire inspection revealed … fire & life safety violation(s)" at the Property and that an "order to correct with specific time frames for remedial action has been given to" Tenant. A copy of the Notice is attached as Exhibit C. The Notice reflected three violations at the Premises involving (i) failing to maintain the fire-hood suppression system free of grease accumulation, (ii) failing to have the cooking-hood fire-suppression system inspected, and (iii) failing to provide documentation of inspection, testing, and maintenance of the fire-alarm system. The Notice required that Tenant comply with certain remedial actions by July 1, 2022.

11. After receiving the Notice, Landlord contacted Tenant by e-mail and in person about the Notice, but Tenant took no action to remedy the violations. To that end, on July 18, 2022, Landlord sent Tenant a Notice of Tenant's Default ("First Notice of Default"), stating that Tenant was "in default of its obligations under Section 11.1 of the Lease" and that, under Section 17.1.3 of the Lease, Tenant had thirty days from receipt of the First Notice of Default to cure its default. A copy of the First Notice of Default is attached as Exhibit D.

12. Despite receipt of the First Notice of Default, Tenant failed to cure the violations set forth in the Notice.

3

**Default of Section 12.2 of the Lease**

13. On July 28, 2022, a contractor served on Landlord a notice to file claim for lien for unpaid services that the contractor performed on Tenant's behalf at the Premises.

14. On August 3, 2022, Landlord sent Tenant a Notice of Default ("Second Notice of Default"), stating that Tenant was in default under Section 12.2 of the Lease and that, under Section 17.1.3 of the Lease, Tenant had thirty days from receipt of the Second Default Notice to cure its default. A copy of the Second Notice of Default is attached as Exhibit E.

15. Despite receipt of the Second Notice of Default, Tenant failed to satisfy the claim of lien. Indeed, on September 7, 2022—which is more than 30 days after Landlord sent the Second Notice of Default—the contractor recorded the claim of lien with the clerk of court of Miami-Dade, County. A copy of the claim of lien is attached as Exhibit F.

**Termination of the Lease and Eviction**

16. On September 12, 2022, Landlord, through its counsel, sent a Notice of Termination of Lease to Landlord, stating that the claim of lien "against the Premises was recorded on September 7, 2022." As a result, Landlord stated that it elected to terminate the Lease under Section 17.2, requesting all unpaid rents for the balance of the term of the Lease as well as all other damages, fees, and costs, and notified Tenant that it must surrender the Premises immediately to Landlord. A copy of the Notice of Termination is attached as Exhibit G.

17. On October 18, 2022, Landlord, through its counsel, served a letter to Tenant stating that it had previously terminated the Lease but that Tenant was still in possession of the Premises. The letter requested that Tenant coordinate with Landlord's counsel to "coordinate the vacating of the Premises" and stating that the failure to do so "may result in an eviction action being filed against" Tenant. A copy of the second letter is attached as Exhibit H.

18.     In response, Tenant did not "immediately … surrender the Premises," which itself was a breach of Section 17.2.1 of the Lease. As a result, on January 17, 2023, Landlord filed a complaint for nonresidential eviction against Tenant, and, on March 28, 2023, Landlord obtained a default final judgment against Tenant, which removed Tenant from the Premises and awarded Landlord possession of the Premises. *See 16251 Boston LLC v. Boston Market Corp.*, No. 2023-003107-CC-23 (Fla. Cnty. Ct.).

19.     During this period, Tenant continued to breach the Lease. Although Tenant was not formally evicted until March 28, 2023, Tenant failed to pay multiple months' worth of rent. And although the Lease required Tenant to pay all property taxes, *see* Lease § 9.1, Tenant failed to do so.

20.     All conditions precedent to this action have occurred, have been performed, or have been waived.

## Count I: Breach of Lease

21.     Landlord realleges the allegations in paragraphs one through twenty as if fully set forth herein.

22.     The Lease is a valid contract.

23.     Under the Lease, Tenant was required to maintain the Premises "in good order and repair" and "make such repairs and replacements as may be necessary," and Tenant was forbidden from rendering Landlord or the Premises liable "for any lien or right of lien for the payment of any claim for labor, material, or for any change or expense incurred to maintain, to repair, or to make Alterations to the Premises." Further, Tenant was required to timely pay rent and to pay property taxes.

24.     Tenant defaulted on these requirements, and, where applicable, Tenant failed to cure them within the applicable thirty-day cure period. Moreover, despite Landlord's having terminated

the Lease in accordance with Section 17.2.1 of the Lease, Tenant failed to surrender the Premises. Thus, Tenant breached the Lease.

      25.     These breaches are material.

      26.     These breaches damaged Landlord.

WHEREFORE, Landlord requests that the Court enter judgment in its favor and against Tenant for all available damages—including, but not limited to, the amount of all unpaid rent for the balance of the term of the Lease after the date of termination and all direct damages suffered by Landlord as a result of Tenant's Events of Default—attorney's fees and costs, and all other relief that the Court considers just and proper.

Dated: April 17, 2023

TOTH FUNES PA

s/Brian W. Toth
Brian W. Toth
Florida Bar No. 57708
btoth@tothfunes.com
Freddy Funes
Florida Bar No. 87932
ffunes@tothfunes.com
Ingraham Building
25 Southeast Second Avenue, Suite 805
Miami, Florida 33131
Telephone: (305) 717-7850

*Counsel for Plaintiff 16251 Boston LLC*